USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/5/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT PABST,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

**MEMORANDUM**
**OPINION & ORDER**

13 Civ. 103 (PGG)
09 Cr. 269

PAUL G. GARDEPHE, U.S.D.J.:

        Petitioner Robert Pabst ("Pabst") has moved to correct his sentence pursuant to 28 U.S.C. § 2255. (Pabst Section 2255 Pet. (13 Civ. 103 Dkt. No. 1)) He claims that this Court miscalculated the amount of restitution at sentencing, and he asks the Court to "correct" the restitution amount. (Id. at 12) Pabst has also filed motions seeking (1) a certificate of relief from civil disabilities (Pabst Oct. 3, 2012 Application and Mar. 7, 2013 Supplemental Application); (2) an order from this Court "rectify[ing]" the erroneous classification of his motion to correct (Pabst Apr. 29, 2013 Mot.); (3) this Court's permission to prepare and file his own tax returns (Pabst June 10, 2013 Pet.); (4) an order directing the Government to serve its answer to Pabst's Section 2255 Petition and to return documents that it allegedly removed from the Clerk's paper case file or, alternatively, provide a reference indicating the location of the missing documents (Pabst June 24, 2013 Mot. (09 Cr. 269, Dkt. No. 49)); and (5) an order to show cause why a cease and desist order should not issue against U.S. Probation Officer Michael Cox, whom Pabst claims is obstructing judicial proceedings by threatening to extend his probation for one year if he does not increase his monthly restitution payments from $25.00 to $200.00. (Pabst Dec. 30, 2013 Mot. (Dkt. No. 11)) For the reasons stated below, all of Pabst's motions will be denied.

## BACKGROUND

On January 12, 2010, the Government obtained a 44-count superseding indictment (the "Indictment") charging Pabst with aiding and assisting in the preparation and filing of false income tax returns, in violation of 26 U.S.C. § 7206(2). (United States v. Pabst, S1 09 Cr. 269 (PGG), Indictment (Dkt. No. 1)) On April 23, 2010, Pabst pleaded guilty to Counts Twenty-One, Twenty-Two, and Twenty-Three of the Indictment pursuant to a plea agreement (the "Plea Agreement"). (Plea Transcript ("Plea Tr.") (09 Cr. 269 Dkt No. 36); Plea Agreement, Govt. Opp. Br., Ex. A. (09 Cr. 269 Dkt. No. 47-1)) The Plea Agreement provides, inter alia, that (1) "the Court may order the defendant to pay restitution to each of the defendant's former tax preparation clients whose tax return(s) the defendant prepared and who were subsequently audited by the Internal Revenue Service[,] in the amount of $500 per tax return prepared by the defendant that was audited;" (2) the Government at sentencing could "seek restitution . . . in an amount reflecting the . . . total loss to the Government;" and (3) the "tax loss amount [for purposes of the Sentencing Guidelines] is greater than $1 million but not greater than $2.5 million." (Plea Agreement (09 Cr. 269 Dkt. No. 47-1) at 2)

During the plea allocution, this Court asked Pabst whether he had "thoroughly read" the Plea Agreement, whether he understood its terms, and whether he had discussed it with his attorney. (Plea Tr. (09 Cr. 269 Dkt No. 36) at 15) Pabst answered "yes" to each question. (Id.) Pabst was also asked whether he understood his potential restitution obligations under the Plea Agreement, and Pabst responded that he did:

> The Court: As part of your sentence, I can order restitution to anyone injured as a result of your criminal conduct, but the plea agreement states that the parties agree to restitution to your clients in the amount of $500 per tax return prepared by you that subsequently was audited by the Internal Revenue Service. The plea agreement also states that the government may, at sentencing, seek restitution as a

2

        condition of supervised release, in an amount reflecting the total
        loss to the government from the tax fraud activity in the years 2002
        to 2004. Do you understand that as part of your sentence, I could
        impose these amounts of restitution on you?

  Pabst:    Yes, I do.

(Id. at 12)

    After accepting Pabst's guilty plea, this Court advised Pabst that it would order a pre-sentence investigation report (the "PSR"), and that Pabst would have an opportunity before sentencing to review and comment on the report. (Id. at 28) The Court "urge[d] [Pabst] to review it carefully with [his attorney] and discuss it with him before sentencing." (Id.) The Court further advised that "[i]f there are any mistakes in the report, [Pabst should] point them out to [his attorney] so he can point them out to [the Court] before sentencing." (Id.)

    The Probation Department completed Pabst's PSR on July 23, 2010. In accordance with the Plea Agreement, the PSR calculates the tax loss amount attributable to Pabst's criminal conduct as between $1 million and $2.5 million. (PSR ¶ 27) The PSR further notes that "[f]ull restitution to the victims is required under 18 USC 3663A and 18 USC 3664" (id. at ¶ 81), and that

> [p]ursuant to the plea agreement, the parties agree that the Court may order Pabst to pay restitution to each of his former tax preparation clients whose tax returns the defendant prepared who were subsequently audited by the IRS, in the amount of $500 per tax return prepared by the defendant that was audited. The amount is intended to refund those clients the approximate fees that Pabst charged them.

(Id. at ¶ 82). Attached to the PSR is a list of Pabst's clients who were audited as a result of his fraud. (Id. at 21 & attachment) Pabst did not submit any objections to the Probation Department or to the Court concerning those portions of the PSR that addressed his potential restitution obligations. (See id. at 16 (PSR Addendum))

This Court sentenced Pabst on September 10, 2010. Two days before sentencing, the Government submitted a proposed restitution order in which it explained that,

> [p]ursuant to page two of the plea agreement . . . , the proposed restitution order provides for restitution for each of the defendant's former tax preparation clients whose tax returns the defendant prepared and who were subsequently audited by the Internal Revenue Service in the amount of $500 per tax return prepared by the defendant that was audited. As set forth in the plea agreement, the restitution amount is intended to refund to the defendant's former clients the approximate fees that the defendant charged those clients.

(Sept. 8, 2010 Govt. Ltr., Govt. Opp. Br., Ex. C (09 Cr. 269 Dkt. No. 47-3)) The restitution amount set forth in the proposed restitution order is $71,000. The Government attached a schedule to its letter listing the names of approximately 100 former Pabst clients who were entitled to restitution. (Id.) At sentencing, this Court stated that it understood that the proposed restitution amount was based on "$500 per tax return, which for some victims means $1,000 because there were multiple years that they were audited for." (Sentencing Transcript (Sentencing Tr.) (09 Cr. 269 Dkt. No. 44) at 3) Both the Government and Pabst's counsel confirmed that this understanding was correct, and that the restitution amount reflected the terms of the Plea Agreement. (Id.) Before sentencing Pabst, the Court asked both Pabst and his counsel whether they had any objections to the PSR. The only objection they raised involved the $300 special assessment. (Id. at 4)

Consistent with the Plea Agreement, this Court determined that Pabst's Guidelines range was between 51 and 63 months' imprisonment. (Id. at 6) The Court concluded that a variance was warranted, however, and sentenced Pabst to 36 months' imprisonment followed by one year of supervised release. (Id. at 20) In imposing sentence, the Court noted that Pabst had "prepared hundreds of tax returns containing fraudulent deductions" and that he "profited directly" from those deductions by charging clients a percentage of their tax refunds. (Id. at 17) The Court also noted that "[t]he parties stipulated in their plea agreement that the tax

4

loss to the government over a three-year period amounted to a sum between 1 million and 2.5 million [dollars]." (Id.) In addition to sentencing Pabst to terms of incarceration and supervised release, this Court imposed "restitution in [ ] accordance with the proposed restitution order . . . which provides for restitution in the amount of $500 per tax return that resulted in an audit of the IRS."[1] (Id. at 22) This Court further ordered that payment of the restitution amount be made a condition of Pabst's supervised release, and that such payment be made in monthly installments of fifteen percent of Pabst's earnings. (Id.) Finally, the Court notified Pabst of his right to appeal his sentence. (Id. at 23-24)

This Court entered a final Judgment of Conviction on September 13, 2010. (Judgment (09 Cr. 269 Dkt. No. 41)) The Judgment included the $71,000 restitution amount as well as a redacted version of the client list appended to the Government's September 8, 2010 letter. (Id.) Pabst did not challenge his sentence on direct appeal. On January 2, 2013, he filed the instant § 2255 petition.

## DISCUSSION

### I.    FAILURE TO APPEAL

"A motion under § 2255 is not a substitute for an appeal." United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998); accord Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998). Rather, it is a "collateral attack on a final judgment" that generally affords relief "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a 'fundamental defect which inherently results in complete miscarriage of

---

[1] Although, in the Plea Agreement, the Government reserved its right to seek restitution for losses suffered by the U.S. Treasury (see Plea Agreement, Govt. Opp. Br., Ex. A. (09 Cr. 269 Dkt. No. 47-1) at 2; Plea Tr. (09 Cr. 269 Dkt No. 36) at 12), the Government sought no such restitution at sentencing. (Proposed Restitution Order, Govt. Opp. Br., Ex. C. (09 Cr. 269  Dkt. No. 47-3))

5

justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

"Because collateral challenges are in 'tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'" Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (quoting Ciak v. United States, 59 F.3d 296, 301 (2d Cir.1995), abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002)). One such rule "prevents [Section 2255] claims that could have been brought on direct appeal from being raised on collateral review absent cause and prejudice." Yick Man Mui, 614 F.3d at 54. "This rule also applies where the defendant fails to appeal at all." Rosa v. United States, 170 F. Supp. 2d 388, 396 (S.D.N.Y. 2001) (citing United States v. Pipitone, 67 F.3d 34, 38 (2d Cir. 1995)). "An exception applies, however, if the defendant establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence." United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011) ("In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal.") (internal citation and quotation omitted). "The '"cause" under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him.'" Viera v. United States, 832 F. Supp. 2d 222, 227 (E.D.N.Y. 2011) (quoting Coleman v. Thompson, 501 U.S. 722, 752 (1991)) (emphasis in Coleman).

Pabst did not challenge any aspect of his sentence on direct appeal. While Pabst argues now that he did not receive a copy of the judgment until November 30, 2012, this claim does not excuse his failure to appeal his sentence. (Pabst 2255 Pet. (13 Civ. 103 Dkt. No. 1) at 8) At sentencing, this Court advised Pabst of the terms of his sentence as well as his "statutory

6

right to appeal [his] sentence under certain circumstances." (Sentencing Tr. (09 Cr. 269 Dkt. No. 44) at 23) Moreover, as outlined above, this Court took steps during Pabst's Rule 11 allocution to ensure that Pabst understood: (1) the terms of the Plea Agreement; and (2) the Court's authority to impose restitution as a result of his guilty plea and the potential restitution amount. Pabst's Section 2255 petition does not "provide any facts showing a cause for his failure to present available claims on direct appeal nor does (or can he) argue [that] he is actually innocent." Viera, 822 F. Supp. at 227. Accordingly, Pabst's Section 2255 petition must be denied for failure to raise the restitution claim on direct appeal.

## II. UNTIMELINESS

Pabst's Section 2255 petition is also untimely. The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a petitioner seeking relief under Section 2255 to file his motion within one year of the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f) (2012).

Pabst did not file his Section 2255 petition until nearly 28 months after entry of the Judgment of Conviction. While the AEDPA's one-year statute of limitations may be equitably tolled under certain circumstances, see Holland v. Florida, 130 S.Ct. 2549, 2560

7

(2010), such tolling is appropriate only where a petitioner can demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland, 130 S.Ct. at 2562 (quoting Pace v. DiGulielmo, 544 U.S. 408, 418 (2005)). "The burden lays with petitioner to establish the entitlement to equitable tolling." Sorce v. Artuz, 73 F. Supp. 2d 292, 299 (E.D.N.Y. 1999).

Pabst has not met that burden here. Since Pabst did not file a direct appeal, his conviction "became final . . . the day after his time to appeal expired." Wims v. United States, 225 F.3d 186, 188 (2d Cir. 2000) (citing Fed. R. App. P. 4(b)). This Court entered its Judgment of Conviction on September 13, 2010. (Judgment (09 Cr. 269 Dkt. No. 41)) Under the version of Fed. R. App. P. 4(b)(1)(A)(i) in existence at the time of sentencing, Pabst had fourteen days to file his notice of appeal. Accordingly, Pabst's conviction became final on September 28, 2010. Pabst did not file his Section 2255 petition until January 2, 2013, however – nearly 28 months after the statute of limitations period had expired. Pabst's explanation for not filing his petition earlier – that he did not receive a copy of the judgment until November 2012 – is not an appropriate basis for equitable tolling. At sentencing, the Court informed Pabst of the terms of his sentence, including his restitution obligations, and of his right to appeal his sentence. (Sentencing Tr. (09 Cr. 269 Dkt. No. 44) at 23-24) Pabst's Section 2255 petition is therefore time-barred.

### III. PROCEDURAL DEFICIENCIES

Pabst's attempt to use Section 2255 to challenge this Court's restitution order is also procedurally improper. In his petition, Pabst makes clear that he is "not arguing [that his] [i]ncarceration" was unlawful; he seeks only to challenge the restitution portion of his sentence. (Pabst Section 2255 Pet. (13 Civ. 103 Dkt. No. 1) at 13) It is well-settled, however, that "§ 2255

8

may not be used to bring collateral challenges addressed solely to noncustodial punishments like the one at issue here." Kaminski v. United States, 339 F.3d 84, 87-89 (2d Cir. 2003). Accordingly, Section 2255 provides no remedy as to the restitution component of a sentence.

## IV. LACK OF MERIT

In addition to its facial deficiencies, Pabst's petition fails on its merits. Pabst appears to contend that the restitution amount ordered by the Court was erroneously calculated because it encompasses more victims and a larger loss amount than is reflected in the three counts to which he pled guilty. (Pabst Section 2255 Pet. (13 Civ. 103 Dkt. No. 1) at 12-13) This argument is misguided. Although Pabst pled guilty to counts involving only one victim and three tax returns, the record demonstrates that he understood and agreed to a restitution amount that encompassed all of his client victims. Courts are authorized, by statute, to enter an order of restitution that the parties have agreed to. See, e.g., 18 U.S.C. § 3663(a)(3) ("The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement."); United States v. Silkowski, 32 F.3d 682, 688-89 (2d Cir. 1994) (noting that Congress amended the Victim and Witness Protection Act in 1990 to include 18 U.S.C. § 3663(a)(3) in order "to clarify the scope of Hughey [v. United States, 495 U.S. 411 (1990)] as allowing restitution beyond the offense of conviction 'when the defendant agrees to such in a plea agreement'") (quoting United States v. Soderling, 970 F.2d 529, 533 (9th Cir. 1992)); see also 18 U.S.C. § 3663A(a)(3) ("The court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.").

Pabst also claims that the total tax loss amount should have been calculated as $100,000 rather than as an amount between $1 million and $2.5 million. (Pabst Aug. 12, 2013 Supp. Pet. (13 Civ. 103 Dkt. No. 9)) Pabst agreed to the latter amount in the Plea Agreement,

9

however. In any event, this argument is irrelevant here, because the restitution order reflects no amount of the tax loss; the restitution order reflects only the $71,000 that Pabst's client victims paid him. (Judgment (09 Cr. Dkt. No. 41))

## IV. REMAINING MOTIONS

On October 3, 2012, Pabst submitted an "application" for a "certificate of good conduct and/or a certificate of relief from disabilities." (Pabst Oct. 3, 2012 Application and Mar. 7, 2013 Supplemental Application) Pabst does not cite a statutory basis for his request. Section 702 of the New York Correction Law grants the power to issue a certificate of relief from civil disabilities to "any court of this state" and, in certain circumstances, the New York State Board of Parole. N.Y. Correct. L. § 702. However, it is well established that "federal courts may not relieve civil disabilities under Section 702." United States v. Reich, 04-CR-587 (NGG), 2007 WL 2891600, at *1 (E.D.N.Y. Sept. 28, 2007) (citing United States v. Da Grossa, 446 F.2d 902, 902-03 (2d Cir. 1971) ("New York cannot direct a federal criminal court to afford a remedy not provided by federal law"); United States v. Fierman, 99-CR-1086, 2002 WL 31640575, at *1 (S.D.N.Y. Nov.20, 2002) ("application . . . is properly made, not to this court, but to the New York State authorities")). Accordingly, Pabst's application is denied.

On April, 29, 2013, Pabst sought an order from this Court "rectify[ing]" the erroneous classification of his motion to correct his sentence. (Pabst Apr. 29, 2013 Mot.) Pabst claims that the "Docket Text" erroneously identifies his motion as "deal[ing] with vacating or setting aside" his sentence. (Id.) Pabst's motion is denied, as the text of the Clerk's docket entries is accurate and, in any event, has no bearing on this Court's resolution of Pabst's petition.

On June 10, 2013, Pabst filed a motion seeking this Court's permission to prepare and file his tax returns. (Pabst June 10, 2013 Pet.) Pabst claims that he is "prohibited from

preparing tax returns" according to the terms of his supervised release. (Pabst June 10, 2013 Pet. at ¶ 3) Pabst is incorrect. The Judgment of Conviction only prohibits Pabst from "engag[ing] in the preparation of tax returns for clients." (Judgment (09 Cr. 269 Dkt. No. 41) at 4) Pabst's application is therefore denied.

On June 24, 2013, Pabst moved this court for "service of process and for missing file documents [to] be located." (Pabst June 24, 2013 Mot. (09 Cr. 269 Dkt. No. 49)) In his motion, Pabst complains that he "was not served" with the Government's answer to his Section 2255 Petition, because the Clerk's Office file for Docket No. 13 Civ. 103 is missing certain documents. On June 24, 2013, the Government informed this Court that a copy of its answer was mailed to Pabst's current address. This Court has taken steps to ensure that the physical file associated with Docket No. 13 Civ. 103 contains all relevant filings. Accordingly, Pabst's June 24, 2013 motion is denied as moot.

Finally, on December 30, 2013, Pabst moved by order to show cause for a cease and desist order against U.S. Probation Officer Michael Cox, whom Pabst complains is pressuring him to increase his monthly restitution payment from $25.00 to $200.00. Pabst's motion is denied. Pabst is directed to comply with the financial obligations imposed upon him by the Probation Department in accordance with the Judgment and the terms of his supervised release.

## CONCLUSION

For the reasons stated above, all of Pabst's motions are denied. The Court further certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962). The Clerk is directed to terminate all outstanding motions and to close this case.

Dated: New York, New York
      December 4, 2014      SO ORDERED.

*Paul G. Sandephe*
Paul G. Gardephe
United States District Judge